Hon. Julio A. Martinez Director State of New York Division of Substance Abuse Services
You have requested an opinion as to the applicability of sections23.01 and 23.03 of the Mental Hygiene Law to substance abuse services provided by the St. Regis Mohawk Health Services primarily for the native American community of the St. Regis Reservation, but also for native Americans residing in bordering communities.
Subdivision (a) of section 23.01 provides that, except for the entities exempted by subdivision (e) (not applicable here), no public or private person, corporation, partnership, agency, either profit or non-profit, nonpublic school, or municipal government shall operate a substance abuse program without the approval of the Division of Substance Abuse Services (hereafter "Division"). Section 23.03 provides for civil penalties upon a finding that a substance abuse program has violated any statute, rule, notice, order or regulation relating to its operation.
Additionally, section 25.03 of the Mental Hygiene Law provides for financial support for substance abuse programs. The Division, based upon its reading of the law, has adhered to the policy that services provided by unapproved programs may not be funded (see14 NYCRR 1050.2).
The St. Regis Mohawk Health Services has applied to the Division pursuant to the provisions of the Mental Hygiene Law for approval of a substance abuse program and for funding of that program. The application has been unanimously endorsed by resolution of the St. Regis Mohawk Tribal Council and the governing body of the St. Regis Indian Reservation of the St. Regis Mohawk Tribe, which consists of three duly elected tribal chiefs.
Your inquiry arises from the special status of Indian tribes under Federal law which limits State jurisdiction. You ask whether, in light of this special status, the St. Regis substance abuse program may be approved, regulated and funded in accordance with the requirements of the Mental Hygiene Law.
Indian tribal sovereignty is dependent on and subordinate only to the Federal government, not the states. State laws may be applied to tribal Indians on their reservations if Congress has so expressly provided (California v Cabazon Band, ___ US ___, 107 S Ct 1083, 1087 [1987]). After reviewing the relevant Federal statutes, it appears that Congress has not provided such express authority to New York State.
Congress has granted this State criminal jurisdiction over offenses committed by or against Indians on Indian reservations and civil jurisdiction over actions between Indians or Indians and other persons (25 U.S.C. § 232, 233). In construing similarly worded provisions enacted in Public Law 83-280, the Supreme Court has held that Congress has not thereby granted states covered by that law, general, civil regulatory authority over Indians on reservations (Bryan v ItascaCounty, 426 U.S. 373 [1976]; California v Cabazon Band,107 S Ct at 1088, supra).
The approval, supervision and funding of substance abuse programs under the Mental Hygiene Law clearly implicates the regulatory authority of the State. Thus, sections 232 and 233 (US Code, Tit 25) appear not to provide the State with authority to regulate substance abuse programs on Indian reservations.
Nor does it appear that section 231 (US Code, Tit 25) provides such authority. That section authorizes State officers acting under regulations promulgated by the Secretary of the Interior to enter Indian lands to inspect health and education conditions and to enforce sanitation and quarantine regulations. However, the regulation allowing enforcement of State health laws on Indian lands was revoked in 1955 as part of the transfer of Indian health functions to the United States Health Service (Cohen's Handbook of Federal Indian Law, 1982 Ed, Michie Bobbs Merrill, p 377, fn 258). The Department of the Interior has concluded that section 231 is not self-executing and requires regulations to make it operative (see Op Sol Int, Feb. 7, 1969 [M-36768], reprinted in II Op Sol Int at 1986).
Although it appears that Congress has not provided authority to New York State to regulate Indian substance abuse programs, the inquiry does not end there. Here the State is not seeking to impose unilaterally its regulatory authority with respect to an Indian substance abuse program. Rather, the St. Regis Mohawk Tribe has, through its tribal government, voluntarily applied for approval and funding of its substance abuse program. Clearly, this request for discretionary funding is consistent with notions of tribal sovereignty and congressional goals of encouraging tribal self-sufficiency and economic development (California v CabazonBand, 107 S Ct at 1092). Moreover, we believe that the funding of this program subject to such reasonable terms or conditions as the State applies to other applicants is consistent with these principles.
As noted above, State funding for substance abuse programs under the Mental Hygiene Law and regulations is dependent upon program approval and regulation by the Division. No exception is made under the law for Indian tribes. We believe that the voluntary application of a native American substance abuse program to the Division for funding and the regulation of the funded program by the Division is consistent with Federal law governing tribal sovereignty. The application would have to be approved by the Division. The program would be subject to funding revocation and the applicant could be assessed civil penalties in the event that regulations are violated (Mental Hygiene Law, §§ 23.01[d],23.03[a]). This limited assertion of jurisdiction by the Division, founded as it is upon the consent of the contracting parties, would in my opinion neither interfere with nor be incompatible with Federal and tribal interests as reflected in Federal law (id., at 1092).